FILED IN CHAMBERS
U.S.D.C. Atlanta

OCT 21 2004

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| and | : |
| CHARLES RIDLEY, et. al., | : |
| Plaintiff-Intervenors, | : |
| vs. | : Civil Action No. 1:69-CV-12972-RLV |
| STATE OF GEORGIA, et. al., (Meriwether County Board of Education), | : |
| Defendants. | : |

### CONSENT DECREE

On August 28, 2003, the Meriwether County School District (hereafter, "School District") filed a Petition for Declaration of Unitary Status in the above-referenced desegregation action. The plaintiff, United States of America, filed an "initial" response and sought formal discovery prior to interposing specific objections to the School District's Petition. The parties engaged in that discovery with the School District providing relevant records, depositions of its employees and members of the Board of Education, and the opportunity for site visits to each of its seven schools. At the conclusion of this process, the parties engaged in negotiations regarding the School District's achievement of "unitary status" in the areas set forth in Green v. School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1698 (1968).

This Consent Decree is the result of the parties' agreement to amicably resolve the disputed issues in this case. Accordingly, upon review, this Court has determined that this Decree is consistent

with the objectives and requirements of the Fourteenth Amendment to the United States Constitution, Title IV of the Civil Rights Act of 1964, 42 U.S.C. §2000c-6, the Educational Opportunities Act, 20 U.S.C. § 1701, et seq., and the previous Orders in this case.

## PROCEDURAL HISTORY

This action was brought by the United States in 1969, pursuant to § 407 of Title IV of the Civil Rights Act of 1964, 42 U.S.C. § 2000c-6, et seq., against the State of Georgia and 81 school districts, including the Meriwether County School District. Charlie Ridley and others subsequently joined this action as Intervenors. In an Order, dated September 17, 1969, this Court issued a detailed regulatory injunction requiring that each of the individual school districts establish a fully integrated school system in compliance with Brown v. Board of Education, 347 U.S. 483 (1954). Subsequently, this Court, in an Order dated July 23, 1973, dissolved the regulatory injunction, holding that the Meriwether County School District (as well as various other school districts included in the 1969 Order) had "for three years complied with the Supreme Court's decision in Brown v. Board of Education, 347 U.S. 483 (1954), and have become 'unitary' in the sense required by the Supreme Court's decisions in Green v. County School Board, 391 U.S. 430 (1968) and Swann v. Board of Education, 402 U.S. 1 (1971)." The Court's Order placed the actions involving these school districts on an inactive docket, and entered a permanent injunction containing various provisions designed to prevent the recurrence of a dual school system.

In the late 1980's, the litigation was reactivated when Plaintiff and Plaintiff-Intervenors filed motions to compel the Meriwether County Board of Education to comply with the July 23, 1973 mandatory injunction. Those proceedings resulted in this Court's Order dated June 28, 1990. That Order adopted a student attendance zone plan presented by the School District following the closure of Woodbury High School, prohibited all intra-district student transfers with the exception of

Majority-to-Minority transfers, and prohibited all inter-district transfers, with the exception of students living within the corporate limits of the City of Manchester within Talbot County. The Court, in that Order, also directed the Board of Education to offer the same courses above the core curriculum at both Manchester High School and Greenville High School. Finally, the Order directed that teaching and staff assignments "be brought in line with the ratio that now exists between the black and white totals in the county, i.e., 60% *[W]* to 40% *[B]*," with a variation of no more than 5%.

In 1995, the Meriwether County Board of Education filed a Petition to Approve Five Year Facilities Plan. The Plan, containing two phases of construction projects, sought the Court's permission to construct a new high school in the City of Greenville, three new elementary schools to replace the six existing at the time, a new middle school in Manchester, and substantial renovations to Manchester High School and to Greenville High School which was to become Greenville Middle School. The Court approved the plan in Orders dated June 27, 1996 and August 27, 1996; the Eleventh Circuit Court of Appeals affirmed this decision on appeal in 1999. U.S. & Ridley, et al. v. State of Georgia (Meriwether Co. Bd. Of Ed.), 171 F.3d 1333 (11th Cir. 1999).

Since this Court's decision approving the School District's construction plans, the following new construction was completed in 1999: Greenville High School, Mountainview Elementary in the south part of the county and Unity Elementary in the north. George E. Washington Elementary School, in the City of Woodbury, was completed in 2002. Substantial modifications and renovations have also been made to Manchester High School, as well as the former Greenville High School which was converted into Greenville Middle School in 1999. The next scheduled new construction will be a new Manchester Middle School.

As a result of these improvements in the School District's facilities, and for direction with regard to compliance with its obligations under both the outstanding desegregation orders and the No

Child Left Behind Act, 20 U.S.C. § 6316(b)(1)(E), 34 C.F.R. § 200.44 (c)(3), the Meriwether County School District filed its Petition for Declaration of Unitary Status.

****************

## I.
## TRANSPORTATION AND EXTRACURRICULAR ACTIVITIES

It is **ORDERED, ADJUDGED and DECREED** that the Meriwether County School District has achieved unitary status in the areas of transportation and extracurricular activities. No further need remains for the Court to retain jurisdiction over these areas of the School District's activities. Accordingly, all injunctions, or portions thereof, relating to transportation and extracurricular activities are hereby dissolved. These functions are appropriately returned to the control of the Meriwether County Board of Education.

***************

It is **ORDERED, ADJUDGED and DECREED** that, with respect to the areas of student assignment, facilities, and staff hiring, assignment, and promotion, the Meriwether County School District shall take the affirmative measures set forth below:

## II.
## STUDENT ASSIGNMENT

At the beginning of the 2004-2005 school year, the Meriwether County School District had an enrollment of 3759 students, of whom 1439 (38.3%) were white, 2249 (59.7%) were African-American, and 71 (2%) were other race/ethnicity.

## II. A. Assignment of Students to Schools

### 1. Intra-District Transfers

The attendance zones, previously approved by the Court in its Order of June 28, 1990, and which the School District has been implementing since that date without permitting intra-district (or intra-zone) transfers other than Majority-to-Minority transfers, shall be maintained.[1]

The only exceptions to this requirement are the following:

**a.** The parties recognize that as of the date of this Decree, all of the schools in the School District are composed of a majority of African-American students. In the event this changes, intra-district transfers shall be permitted to re-implement the Majority-to-Minority (M-to-M) program required by the Court's Order of June 28, 1990, and the program shall be widely advertised, including but not limited to, publication of its terms in the largest newspaper in the county (in a prominent notice, not with the legal notices) on at least a semi-annual basis and annually in each school's student handbook.

**b.** Faculty and staff members who do not reside in the attendance zone where they are assigned to teach shall be permitted to bring their own children to the school where they are employed, or to any other school within that zone.

**c.** Transfers for "hardship" may be approved by the Superintendent only upon submission of: (1) a written request setting forth a description of the "hardship" and the basis for the need to transfer; and (2) any records requested by the Superintendent to verify the need to transfer. "Hardship" will generally be defined as relating only to medical needs, safety, or welfare of a student,

---

[1] A "majority-to-minority transfer" is defined as the voluntary transfer of a student whose race is that of the majority of the students enrolled at his/her assigned school to another school in the school district in which that student's race is that of the minority of the students enrolled.

and, specifically, only when the student's medical need, safety, or welfare will be enhanced by attendance at the requested transfer school; and will not be approved on the basis of the convenience of student, parent(s)/guardian(s), or their employment schedules. See, U.S. v. Lowndes Co. Bd. of Ed., 878 F.2d 1301 (11th Cir. 1989). Such transfer requests shall be renewed annually. The Superintendent shall forward these records immediately to Plaintiff which shall promptly notify the School District if it contends that the transfer is in violation of the terms of this Decree.

### A. 2. Inter-District Transfers.

The School District may accept students who reside outside of Meriwether County on the following bases:

**a.** Faculty and Professional Administrative Staff who reside outside of Meriwether County may enroll their child or children in Meriwether County Schools. The school selected for attendance shall be decided by the Superintendent upon determination that the students(s)' enrollment will not have a negative effect on desegregation.

**b.** Transfers into the School District shall be permitted, provided such transfers do not have a negative effect on desegregation in the sending school if the sending school district is operating under a federal school desegregation order, or result in a deviation of more than +/- 5% from the racial composition of the receiving Meriwether school. The School District shall not accept any inter-district transfers if the receiving school has reached its building capacity as defined by the Board for each school. Transfers into the School District shall not be made into any school which deviates from the district-wide racial ratio by more than +/- 15%.

### A. 3. Records and Reports

The Superintendent shall be required to keep records documenting each request for a transfer pursuant to Section II. A. 1. and 2. of this Decree. The records shall include: (1) each transfer student's name, grade, and race; (2) for intra-district transfers, also the name and racial composition of the sending and receiving school; (3) for inter-district (out-of county) transfers, also the name of the sending school and school district and the name and racial composition of the receiving Meriwether school; and (4) the reasons for granting or denying each transfer request. These records shall be submitted as part of the School District's annual report to the court, specified in Section V, infra.

### II. B. Assignment of Students to Classes and Courses

**1.** The parties acknowledge that for the 2003-2004 school year, Meriwether had a limited number of one-race classes without educational justification and where desegregative alternatives existed. Therefore, the School District shall make every good faith effort to ensure that one-race classes are eliminated except where educationally justified and where desegregative alternatives do not exist.

**2.** Honors and Advanced Placement level courses and continuum of multi-level courses/ series shall be offered on the same basis at both high schools. Principals and counselors at the middle and high schools shall encourage all students, including special education and gifted students, to select advanced courses when they register for classes.

**3.** The Superintendent shall require principals and counselors at the middle and high schools to immediately develop and implement procedures to encourage all students, including special education and gifted students, to select advanced courses when they register for classes. Principals

and counselors shall receive appropriate training in this regard. A report detailing the procedures developed to implement these requirements and describing the training provided shall be submitted to the Plaintiffs by no later than February 15, 2005. An update on those actions taken to implement procedures to encourage all students, including special education and gifted students, to select advanced courses when they register for classes, shall be included in the School District's annual reports to the court.

**B. 4.** For any student who requests an honors, advanced placement, or continuum of multi-level courses not offered at his/her high school, or which is offered but not taught because of insufficient student registration, the Board shall provide available online courses for the second semester of the 2004-2005 academic year. By no later than the beginning of the 2005-06 academic year, the Board also shall provide a direct video stream computer feed from the high school that offers the requested course to the other high school. Tutoring shall be made available for students taking courses by direct video stream and students shall be made aware of this service upon enrollment in such courses.

**5.** The School District's Gifted Coordinator shall develop a written plan to promote interest in the Gifted Program to parents/guardians of minority students. The plan also shall address specific steps the School District shall take, or has taken, to train teachers in grades K-8 to identify students potentially eligible for admission to the Gifted Program. A report on the Gifted Plan shall be provided to Plaintiffs by February 15, 2005, and Plaintiffs shall have 45 days from receipt thereof to notify the School District if Plaintiffs have objections.

## III.
## FACILITIES

### A. Elementary Schools

The parties agree that the construction of the three new elementary schools which replaced the six former Meriwether elementary schools has sufficiently addressed the quality of the schools available to African-American and white elementary school students and that the School District has met its desegregation obligation with respect to elementary school facilities.

### III. B. High Schools

The parties agree that with the construction of the new Greenville High School and the renovations to Manchester High School, the core physical plants of both high schools are of equal quality. Greenville High School's football field will be ready for play by the beginning of the 2005-2006 school year and will include a concession stand, restrooms, and bleachers. The parties agree that the failure to construct a new stadium at Greenville High School shall not preclude the Court from granting unitary status as to the quality of the School District's facilities.

### C. Middle Schools

Substantial renovations to Greenville Middle School were undertaken in 1999, and additional renovations are in progress which shall be completed by January 1, 2005. When the renovations to Greenville Middle School are completed, the two portable units at that Middle School will be removed and the area behind the school buildings will be landscaped to provide students with "green space."

The Board will construct a new Manchester Middle School that will be completed for occupancy no later than the beginning of the 2007-2008 school year. The Board will encourage the City of Manchester to use the present Manchester Middle School to benefit the surrounding community.

When construction of the new Manchester Middle School is completed, the Plaintiffs will be given the opportunity to conduct an on-site inspection of the new Manchester Middle School and the renovated Greenville Middle School.

## D. Educational Technology

The School District shall continue to make technology available among the schools on an equal basis. The parties will agree by December 1, 2004, on a format for recording and reporting expenditures on technology and the general condition and availability thereof for each school. This report shall be made as a part of the School District's annual report to the court. The determination of whether technology is available on an equal basis shall be made considering the number of students attending each school, the actual use made of the computers and related technology, the age and general capabilities thereof.

## IV.
## STAFF HIRING & ASSIGNMENT

At the beginning of the 2004-2005 school year, the School District employed 295 full-time teachers, of whom 66.1% (195) are white, and 33.9% (100) are African-American. Teacher assignment among the District's schools deviates significantly from the district-wide ratio, for example, see Manchester High School whose teachers are 90.5% (38) white and 9.5% (4) African-American. Accordingly, the parties agree that, with respect to the area of faculty, hiring, promotion, and assignment, the School District has not complied with the prior orders of the Court and, therefore, has not achieved unitary status.

Therefore, it is **ORDERED, ADJUDGED and DECREED** that, with respect to the area of faculty, hiring, promotion, and assignment, the School District has not achieved unitary status. The Board of Education is committed to the elimination of the vestiges of the dual system in this area, and

has agreed to immediately develop and implement policies, procedures, and practices to obtain this objective as follows:

**IV. A.** The Board of Education shall revise the section of its policy manual applicable to personnel practices related to hiring, assignment, and promotion of personnel, to enable development and adoption of the procedures and practices identified in **B.**, supra. Included in those revisions shall be a policy addressing the advertisement of vacancies in both teaching and administrative positions. The Board's policy revisions shall be submitted to Plaintiffs for review by February 15, 2005. Plaintiffs shall have 45 days thereafter in which to notify the Board of any concerns or suggested modifications thereto.

**B.** The Board shall direct the Superintendent and administrative staff to revise the practices and procedures used to hire and assign administrators, faculty, and staff so that the process is a centralized one, supervised by the Superintendent and Assistant Superintendent for Personnel. Among the changes that have been, or shall be, made are the following:

**1.** The Assistant Superintendent for Personnel, whose primary responsibilities shall be personnel matters, shall be in charge of the application and interview process. The Assistant Superintendent shall develop and submit to the Board for approval standardized procedures for interviewing applicants, utilizing interview committees as well as objective and standardized lists of interview questions. Upon approval of those interview procedures by the Board, the Assistant Superintendent for Personnel shall be responsible for selecting and training committee members in appropriate procedures for conducting interviews.

**2.** The Board of Education shall provide sufficient funding for the Assistant Superintendent for Personnel to develop a program enhancing the School District's current

recruitment program, which shall include funds for annual travel within and outside of the State, to specifically include recruitment trips to historically black colleges and universities in the region and to regional job fairs, and may include financial incentives for minority applicants to teach in Meriwether County.

      **3.** The Assistant Superintendent for Personnel shall develop and submit to the Board for approval a program that provides incentives for current faculty members at the two high schools to offer themselves for reassignment to the other high school in order to achieve greater racial balance in the teaching faculties of the two high schools. The School District shall not be required to involuntarily reassign high school faculty members from one high school to the other.

      **4.** The Assistant Superintendent for Personnel shall prepare a report detailing the features of the standardized application and interview process, the training program for interview committee members, the recruitment program for minority applicants, and the incentive plan for reassignment of faculty between the two high schools. The report shall be forwarded to Plaintiffs with the Board's revised personnel hiring, promotion, and assignment policies (Part A, supra) by February 15, 2005. Plaintiffs shall have 45 days thereafter in which to notify the School District of any concerns or suggested modifications thereto.

**IV. C.** The School District shall not be required to achieve a particular numerical goal with respect to hiring of minority applicants, but agrees to make every good faith effort to fulfill their continued desegregation obligations under applicable federal law. See, Singleton, supra; Lowndes County, supra; Lee v. Lee Co. Bd. of Ed., 639 F.2d 1243 (5th Cir. 1981).

**III. D.** The School District shall retain copies of all professional job applications and interview committee forms for the duration of this Decree and shall permit Plaintiffs to review same upon reasonable notice.

## V.
## ANNUAL REPORTING

**A.** In addition to any other reports referred to in this Decree, <u>supra</u>, the Meriwether County School District shall file with this Court and submit to the parties an annual report. The School District shall file its report for the 2004-2005 year on or before March 15, 2005, and, thereafter, shall file its report annually on or before November 1. The annual report to the Court shall include the following information for the then-current school year:

    **1.** The number and percentage of students, by race, grade level, and class, enrolled in each school in the School District;

    **2.** The number and percentage of students, by race, grade, and class, in special education, gifted, honors and advanced placement programs at each school in the School District;

    **3.** The number and percentage of instructional personnel assigned to each school in the School District, by race, grade level and position, certified and non-certified status, and number of years employed by the School District;

    **4.** The number and percentage of administrative personnel in the School District, by race, position and location of the position, and level of certification, and number of years employed by the School District;

5. The number and type of professional positions filled over the past twelve months, by race, as well as the number and race of the applicants for each position, and the race of the individual hired for each position;

6. The number and percentage of students who have requested transfers to a school in which their parent/guardian is employed, by race, grade, sending and receiving school, and whether each such request was granted or denied for current school year;

7. The number and percentage of students who have requested transfers into the Meriwether County School District, by race, grade, receiving school, sending school district and sending school, and the number of those requests which were granted, by race;

8. Based upon the School District knowledge of requests for transfer of student records, the number and percentage of students who have transferred out of Meriwether County School District, by race, sending school, receiving school district, and receiving school.

9. Educational technology for each school, including annual expenditures, number and type of computers and related technology, age and general condition, and general capabilities, (as referenced in Section III, Facilities, D., supra).

10. A copy of the School District's course catalogue for each of the two high schools and each of the two middle schools;

11. The Honors, Advanced Placement courses and continuum of multi-level courses/series requested and those taken each semester by students attending the two high schools, the race of each student taking each identified course, and whether the course is offered as a regular class, on-line, or by direct computer video-stream, and whether tutoring is provided.

    **B.**  Plaintiff shall have ninety (90) days from receipt of the report to the court to notify the School District if Plaintiffs contends that the School District has not complied with the terms of this Decree or its desegregation obligations.

## VI.
## REVIEW AND TERMINATION

    The parties agree that this Court shall retain jurisdiction for purposes of monitoring and enforcing compliance with the terms of this Consent Decree and the prior orders of the Court herein, except as amended. The reporting and notification requirements imposed on the parties are intended to assist the School District in achieving the goal of a unitary school system within the time frame outlined in this Order.

    At the beginning of the 2007-2008 school year, the School District shall move for dismissal of this case and a declaration of unitary status. Should Plaintiffs seek discovery at that time, it shall be limited to those matters which Plaintiffs have raised during the period of this Decree. The Court thereafter will schedule a hearing in order to determine whether dismissal of the case is appropriate.

    **SO ORDERED**, this _21ST_ day of _Oct._, 2004.

                                                */s/ Robert L. Vining, Jr.*
                                                ROBERT L. VINING
                                            UNITED STATES DISTRICT JUDGE

The signature of counsel on the following page indicates the consent of the parties hereto:

**FOR THE PLAINTIFF UNITED STATES:**

SALLY Q. YATES
Acting United States Attorney
Northern District of Georgia

SHARON B. STOKES
Acting Chief, Civil Division
United States Attorney's Office
Georgia Bar No. 227475

R. ALEXANDER ACOSTA
Assistant Attorney General
Civil Rights Division

FRANZ R. MARSHALL
SALLIANN S. M. DOUGHERTY
Attorneys
Educational Opportunities Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
[Patrick Henry Building]
Washington, D.C. 20530
Telephone: (202) 514-4092/514-2858
Facsimile: (202) 514-8337

**FOR RIDLEY PLAINTIFF-INTERVENORS:**

NORMAN J. CHACHKIN
N.A.A.C.P. Legal Defense and
    Educational Fund, Inc.
99 Hudson Street, 16th Floor
New York, New York 10013
Telephone: (212) 965-2200
Facsimile: (212) 219-2052

**FOR DEFENDANT MERIWETHER
    COUNTY BOARD OF EDUCATION:**

MARTHA M. PEARSON
Georgia Bar No. 569375
Harben & Hartley, LLP.
Wachovia Center, Suite 750
340 Jesse Jewell Parkway
Gainesville, Georgia 30501
Telephone: (770) 534-7341
Facsimile: (770) 532-0399

**FOR DEFENDANT STATE OF GEORGIA:**

ALFRED L. EVANS, JR.
Georgia Bar No. 251400
Senior Assistant Attorney General
132 State Judicial Building
40 Capital Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: (404) 656-3389
Facsimile: (404) 657-9932